# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

JOHN FRANCIS BRANOM, II
DONNA LEE BRANOM

        Debtors

Case No. 3:23-bk-32023-SHB
Chapter 7

ANGELA REED

        Plaintiff

        v.

JOHN FRANCIS BRANOM, II and
DONNA LEE BRANOM

        Defendants

Adv. Proc. No. 3:24-ap-03008-SHB

## M E M O R A N D U M

**APPEARANCES:**  WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC
    Gregory C. Logue, Esq.
    S. Cole Wheeler, Esq.
    Post Office Box 900
    Knoxville, Tennessee  37901-0900
    Attorneys for Plaintiff

    LAW OFFICES OF MAYER & NEWTON
    John P. Newton, Esq.
    Kevin S. Newton, Esq.
    Richard M. Mayer, Esq.
    8351 E. Walker Springs Lane
    Suite 100
    Knoxville, Tennessee  37923
    Attorneys for Defendants

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff timely commenced this adversary proceeding by filing the Complaint to Establish Nondischargeability on February 21, 2024 [Doc. 1], as amended on July 25, 2024 [Doc. 19[1]] (collectively "Complaint"), seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A) and/or (a)(6). Specifically, the Complaint asks the Court to apply the principles of collateral estoppel to the state-court judgment entered in *Reed v. Branom, et al.*, Case No. 2023 CV 0427, Civil Division of the Common Pleas Court of Greene County, Ohio ("State Court Lawsuit") on November 13, 2023, awarding Plaintiff a judgment against Defendants in the amount of $67,500.00 ("Judgment"[2]). Defendants timely answered the Complaint, denying Plaintiff's allegations of fraud and her entitlement to a nondischargeable judgment. [Docs. 6, 21.]

Now pending is Plaintiff's Amended Motion for Summary Judgment[3] ("Summary Judgment Motion") filed on September 16, 2024 [Doc. 23], asking the Court to determine as a matter of law that the Judgment is nondischargeable under § 523(a)(2)(A).[4] The Summary Judgment Motion is supported by a Statement of Undisputed Material Facts ("Undisputed Facts Statement") as required by E.D. Tenn. LBR 7056-1(a) [Doc. 25] and a brief as required by E.D. Tenn. LBR 7007-1(a) [Doc. 24]. Plaintiff references and relies on the exhibits attached to the Complaint: (A) a Residential Property Disclosure Form executed by the parties (the "RPDF") [Doc. 19-1]; (B) a Real Estate Purchase Contract executed by the parties ("Sales Contract")

---

[1] The Amended Complaint was filed with permission from the Court per the Order entered July 12, 2024 [Doc. 18].

[2] The Judgment includes two parts: the Magistrate's Decision, containing findings of facts and conclusions of law, and the one-page Judgment Entry Adopting Magistrate's Decision. [Doc. 19-4.] The Court will reference the Judgment generally but will refer specifically to any references to the Magistrate's Decision.

[3] Plaintiff filed a motion on September 13, 2024; however, the supporting documents were filed erroneously in the same docket entry as attachments, rather than as separate documents [Doc. 22]. The amendment was filed to correct the filing error.

[4] Although the Complaint includes § 523(a)(6) as a basis for nondischargeability, the Summary Judgment Motion is limited to arguments under subsection (a)(2)(A).

[Doc. 19-2]; (C) a Warranty Deed recorded with the Greene County Recorder on September 13, 2022 [Doc. 19-3]; (D) the Judgment [Doc. 19-4]; and (E) a repair estimate from Bertchlynn Services [Doc. 19-5].

Defendants timely opposed the Summary Judgment Motion [Doc. 29], filing their Affidavit[5] [Doc. 29-1], a response to the Undisputed Facts Statement ("Response to Undisputed Facts Statement") [Doc. 31], and a brief [Doc. 30].[6] The Court also has considered any documents of record in Defendants' underlying bankruptcy case that have been referenced by either party in any of the foregoing documents. *See* Fed. R. Evid. 201.[7]

## I. UNDISPUTED FACTS

On June 25, 2022, the parties executed the RPDF and the Sales Contract, by which Plaintiff agreed to purchase and Defendants agreed to sell residential real property located at 3624 Shawnee Trail, Jamestown, Ohio ("Property") for $190,000.00. [Docs. 25, 31 at ¶¶ 1-4; *see also* Docs. 19-1, 19-2, 19-4 at 4.] The RPDF states that Defendants "knew of no 'previous or current water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space.'" [Doc. 19-4 at 4 (citing Doc. 19-1).] Defendants also represented in the RPDF that "they knew of no 'previous or current movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with the foundation basement/crawl space,

---

[5] Defendants' Affidavit is attached to their Response as Exhibit A. Although the Affidavit states that "[a] copy of our Answers to the discovery are attached hereto itemizing some of the information that was supplied to the Plaintiff during this Adversary Proceeding[,]" [Doc. 29-1 at ¶ 6], no such discovery responses were attached to the Affidavit or to any other document filed by Defendants in opposition to the Summary Judgment Motion.

[6] Defendants also attached as Exhibit B to their response the originally filed Complaint and the exhibits attached thereto; however, because those documents are identical to those included with the Amended Complaint to which each document was attached separately, the Court will refer to the RPDF, Sales Contract, Warranty Deed, Judgment, and repair estimate by their own docket numbers (i.e., Docs. 19-1 through 19-5, respectively).

[7] All references to the record in Defendants' underlying bankruptcy case shall be to Bankr. Doc. __.

floors, or interior/exterior walls.'" [*Id*.] Additionally, the RPDF includes the following statements and certification:

> Purpose of Disclosure Form: This is a statement of certain conditions and information concerning the property actually known by the owner. An owner may or may not have lived at the property and unless the potential purchaser is informed in writing, the owner has not more information about the property than could be obtained by a careful inspection of the property by a potential purchaser. Unless the potential purchaser is otherwise informed, the owner has not conducted any inspection f generally inaccessible areas of the property. This form is required by Ohio Revised Code Section 5302.30.
>
> THIS FORM IS NOT A WARRANTY OF ANY KIND BY THE OWNER OR BY ANY AGENT OR SUBAGENT REPRESENTING THE OWNER. THIS FORM IS NOT A SUBSTITUTE FOR ANY INSPECTIONS. POTENTIAL PURCHASERS ARE ENCOURAGED TO OBTAIN THEIR OWN PROFESSIONAL INSPECTION(S).
>
> Owner's Statement: The statements contained in this form are made by the owner and are not statements of the owner's agent or subagent. The statements contained in this form are provide by the owner only to potential purchasers in a transfer made by the owner. The statements are not for purchasers in any subsequent transfers. The information contained in this disclosure form does not limit the obligation of the owner to disclose an item of information that is required by any other statute or law to be disclosed in the transfer of residential real estate.
>
> . . . .
>
> Owner certifies that the statements contained in this form are made in good faith and based on his/her actual knowledge as of the date signed by the Owner. Owner is advised that the information contained in this disclosure form does not limit the obligation of the owner to disclose an item of information that is required by any other statute or law or that may exist to preclude fraud, either by misrepresentation, concealment or nondisclosure in a transaction involving the transfer of residential real estate.

[Doc. 19-1 at 1, 5.]

The sale of the Property occurred on August 29, 2022, as evidenced by the Warranty Deed. [Docs. 25, 31 at ¶¶ 5-6; *see also* Docs. 19-3, 19-4 at 3.] Defendants had inherited the Property and lived in it, making "improvements to the home, including upgrading the floors in the kitchen and both bathrooms, as well as updating all of the trim in the home to a thicker farmhouse style trim." [Docs. 19-4 at 3, 29-1 at ¶ 5; *see also* Doc. 29-1 at ¶ 5 ("We made some

improvements to the property to enable us to sell the property in particular some trim and flooring.").]

Plaintiff filed the State Court Lawsuit on June 20, 2023, "asserting claims for breach of contract, fraud, unjust enrichment, detrimental reliance, and resulting damages." [Doc. 19-4 at 3; *see also* Docs. 25, 31 at ¶ 7.] The magistrate held a hearing on September 8, 2023, on Plaintiff's motion for default judgment against Defendants. [Doc. 19-4 at 1.] Because they did not have the financial resources to pay for an attorney, Defendants did not appear to defend the State Court Lawsuit, and a trial was held without their presence or participation. [Docs. 19-4 at 3, 29-1 at ¶¶ 3-4.] As detailed on pages two and three of the Magistrate's Decision, the magistrate made the following findings of fact concerning the condition of and necessary repairs to the Property:

- After living in the Property for between 30 and 45 days, Plaintiff discovered significant water retention and that because of the yard's grade, water runs from the front yard through the crawl space to the backyard, causing the house to settle unevenly and the walls, joints, and floors to shift and gap.

- The floors and door frames are not level in numerous places within the house, as evidenced when Plaintiff removed trim installed by Defendants to install hardwood floors.

- Cracks and drywall tape became visible in multiple areas of the home within weeks after Plaintiff moved in.

- "There [were] bubbles in the ceiling of the master bathroom . . . , a crack in the wall of the bathroom off the kitchen that was concealed with drywall tape and mud and then covered with a large piece of molding . . ., a crack in the ceiling of that same bathroom . . ., damage to the wall and ceiling in the hallway that was covered with drywall tape and mud . . ., and damage to a wall in a room [Plaintiff] calls her office that was covered with drywall tape and a trim piece . . . – none of which were visible during the inspection conducted prior to [Plaintiff] closing on the home."

- "Due to the severe slope toward the house, water runs through the crawl space to get to the back of the [P]roperty, which causes the pylons under the house to settle further and unevenly. Fixing the water flow and retention issues on the property is necessary to prevent uneven settling issues from occurring again in the future."

- "[The] estimate for water remediation is $20,000, leveling the house is $20,000, and fixing the interior is $20,000-$30,000 . . . [plus a return inspection] a year after the

> repairs to 're-laser and check for any sinking and adjust if needed.' The estimated costs for this is $3,000."

[Doc. 19-4 at 4-5.[8]]

After expressly finding that Defendants had been served with process but failed to answer, the magistrate granted Plaintiff a default judgment under Ohio Rule of Civil Procedure 55(A). [*Id*. at 5-6.] The magistrate also found that Plaintiff proved entitlement to damages of $63,000.00 under Ohio Revised Code Annotated section 5302.30, which "requires sellers of real property to disclose patent or latent defects within their actual knowledge on a residential property disclosure form" and Ohio case law stating that "[i]f the sellers fail to disclose a material fact on the form with the intention of misleading the buyer, and the buyer relies on the form, the seller[s are] liable for any resulting injury." [*Id*. at 6.]

Finally, the magistrate stated the following with respect to punitive damages and attorneys' fees:

> In Ohio, an award of punitive damages is available only upon a finding of actual malice. The Supreme Court of Ohio has defined "actual malice" for purposes of a punitive damage award as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." If punitive damages are property awarded, "the aggrieved party may also recover reasonable attorneys fees . . .". Conversely, a court may not award attorney fees without a finding of malice and the award of punitive damages, unless there is a basis for sanctions under Civ. R. 11.

---

[8] Included within the magistrate's findings of fact are references to exhibits that are not part of the record in this adversary proceeding; however, the Court can deduce that the referenced exhibits were photographs offered by Plaintiff during the trial to show the condition of the Property.

> The undersigned has considered the evidence presented on the issue of punitive damages and finds the Branoms have exhibited actual malice through a conscious disregard for the rights and safety of Angela Reed that has a great probability of causing substantial harm. The undersigned finds that the Branoms had actual knowledge of most of the defects in the home and rather than disclose them, the Branoms went out of their way to cover them with drywall tape, paint, and pieces of trim to prevent their discovery during inspection. Indeed, the nature and number of defects the Branoms fraudulently failed to disclose had a great probability of causing substantial harm to Angela Reed. Therefore, the undersigned finds Angela Reed is entitled to an award of punitive damages and attorney fees herein.

[*Id*. at 6-7 (internal case citations omitted).] The magistrate concluded by finding that Plaintiff "established damages by a preponderance of the evidence in the amount of $63,000" and was "entitled to an award of punitive damages in the amount of $1,000 and reasonable attorneys fees in the amount of $3,500" for a "total judgment of $67,500.00 plus statutory post-judgment interest [and costs]." [*Id*. at 7.]

As reflected in the Judgment entered on November 13, 2023, Defendants did not file any objection to the Magistrate's Decision, and the judge of the Common Pleas Court General Civil Division fully adopted and approved the Magistrate's Decision, stating:

> The Court has reviewed the facts independent of the findings by the Magistrate, has reviewed the Court's file, and the evidence as reported by the Magistrate. The Court is of the opinion that the Magistrate properly determined the factual issues and correctly applied the law.
>
> The Court finds that there is no error of law or other defect on the face of the Magistrate's Decision. Therefore, the Magistrate's Decision, attached hereto, is hereby adopted, approved, and is the Order of the Court.
>
> The Court GRANTS Angela Reed's Motion for Default Judgment as to claims asserted in her Complaint against Defendants Donna Branom and John Branom. The Court further GRANTS judgment in favor of Plaintiff Angela Reed against Defendants Donna Branom and John Branom, jointly and severally, as follows: Damages by a preponderance of the evidence in the amount of $63,000.00, punitive damages in the amount of $1,000.00, and reasonable attorney fees in the amount of $3,500.00, for a total judgment amount of $67,500.00 plus statutory post-judgment interest. Court Costs shall be assessed against Defendant[s] Donna Branom and John Branom jointly and severally.

[*Id*. at 1.]

## II. ANALYSIS

### A. Rule 56 – Standard for Summary Judgment

Federal Rule of Civil Procedure 56, which is applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the procedures defined in subsections (c)(1) through (c)(4). When deciding a summary judgment motion, the Court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff, as movant, bears the burden of proving that the record presented to the Court establishes the lack of a genuine dispute of material fact such that she is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a [fact-finder] to return a verdict for that party.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 249). "The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case." *Dymarkowski v. Boyd* (*In re Bailey*), No. 18-33023, Adv. Pro. No. 19-03055, 2020 WL 6342862, at *4 (Bankr. N.D. Ohio Sept. 30, 2020) (citing *Celotex Corp.*, 477 U.S. at 325).

Once the initial burden of proof is met, the burden shifts to the nonmoving party to prove that there are genuine disputes of material fact for trial, but reliance solely on allegations or denials contained in the pleadings is insufficient because a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  The Court views the facts and all resulting inferences in a light most favorable to Defendants to decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243.

Plaintiff argues that she is entitled to a determination as a matter of law that the Judgment, which includes findings of actual malice and a fraudulent failure to disclose known defects in the home, is nondischargeable under the doctrine of collateral estoppel as applied to her claim under § 523(a)(2)(A).  Plaintiff's argument requires the Court to analyze (1) whether the Judgment, which she obtained by default, is entitled to collateral estoppel effect under Ohio law and, if so, (2) whether it satisfies the requirements of § 523(a)(2)(A) and is nondischargeable.

### B.  Nondischargeability under § 523(a)(2)(A)

Bankruptcy limits its "fresh start" to "the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Defendants were discharged in their Chapter 7 case on April 11, 2024 [Bankr. Doc. 52], but Plaintiff seeks to except from that discharge the debt owing

to her from the Judgment. Her Summary Judgment Motion asks the Court to determine as a matter of law that the Judgment serves to estop Defendants from challenging her nondischargeability claim under § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from the § 727 discharge any debt "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Because the fresh start is a central goal of bankruptcy, "[e]xceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor." *Hemme v. Hakli* (*In re Hakli*), No 23-13534, Adv. Proc. No. 24-1001, 2024 WL 4379768, at *4 (Bankr. N.D. Ohio Oct. 1, 2024) (citing *Rembert v. AT&T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998); *Livingston v. Transnation Title Ins. Co.* (*In re Livingston*), 372 F. App'x 613, 618 (6th Cir. Apr. 9, 2010)). Plaintiff must prove by a preponderance of the evidence all elements of a claim for nondischargeability under § 523(a)(2)(A):

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d at 280–81.

### C. Collateral Estoppel

Collateral estoppel – or issue preclusion – "prevents parties from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit," *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 236 N.E.3d 176, 182 (Ohio 2023), and applies in nondischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). "The preclusive effect of a state-court judgment is determined by the law of the state in which the judgment was entered." *Long v. Piercy* (*In re Piercy*), 21 F.4th 909, 920 (6th Cir. 2021) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Thus, Ohio law applies to the Court's analysis of the collateral estoppel effect of the Ohio Judgment.

The Ohio Supreme Court recently reiterated its rule concerning collateral estoppel:

> Issue preclusion applies "when the fact or issue (1) was actually and directly litigated in the prior action[ and] (2) was passed upon and determined by a court of competent jurisdiction[] and (3) when the party against whom collateral estoppel is asserted was a party in privity with the party to the prior action."

*AJZ's Hauling, LLC*, 236 N.E.3d at 182 (alterations in original) (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)). "In essence, the doctrine provides that facts or issues that were fully, fairly, and necessarily determined between the parties in a prior judicial setting may not be relitigated in a later action, regardless of whether the claims in the two actions are identical or different." *Woodrow v. Heintschel*, 956 N.E.2d 855, 859 (Ohio Ct. App. 2011) (citations omitted)); *see also AJZ's Hauling, LLC*, 236 N.E.3d at 183 (stating that issue preclusion applies "when the parties had a full and fair opportunity to be heard on an issue, the trial court issued a final, appealable order determining that issue, the parties failed to pursue a direct appeal or other available remedies to challenge that court's order, and the parties did not commit bad-faith acts during the course of that litigation"). "Ohio law recognizes that a default judgment is a valid and final judgment on the merits." *Duncan v. U.S. Bank, NA*, 574 F. App'x 599, 602 (6th Cir. July 25, 2014).

In the bankruptcy context, "when asked to determine the potential application of collateral estoppel, [the Court] must review the record of the state-court proceeding to determine if any factual issues relevant to dischargeability have been actually and necessarily determined by the state court." *In re Long*, 21 F.4th at 919 (applying Tennessee law). Here, the second and third elements clearly are satisfied because Defendants do not dispute that the Judgment was entered by a competent court with appropriate jurisdiction and is final or that the parties in the State Court Lawsuit are the same as here. Thus, the Court must answer the sole remaining element: whether the issues raised here are identical to the issues in the state court and, if so, whether they were actually and directly litigated in that court.

1. **The issues are identical.**

The Summary Judgment Motion must be denied unless the issues underlying the Judgment are the same as for a nondischargeability claim under § 523(a)(2)(A). Concerning actual fraud:

> "Actual fraud" [under § 523(a)(2)(A)] is a broader ground for excepting a debt from discharge and encompasses frauds that do not depend on a misrepresentation. *First Citizens Nat'l Bank of Upper Sandusky v. Mann* (*In re Mann*), 646 B.R. 444, 455 (Bankr. N.D. Ohio 2022); *Risk v. Hunter* (*In re Hunter*), 535 B.R. 203, 212 (Bankr. N.D. Ohio 2015). "Actual fraud" includes any "deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Mellon Bank, N.A. v. Vitanovich* (*In re Vitanovich*), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001).

*Rable v. Childers* (*In re Childers*), 651 B.R. 699, 718 (Bankr. N.D. Ohio 2023). As explained by the Supreme Court, "actual fraud" encompasses "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l. Elecs., Inc. v. Ritz*, 578 U.S. 355, 362 (2016). Both misrepresentation and actual fraud under § 523(a)(2) require an intent of the debtor to deceive. *In re Childers*, 651 B.R. at 726, 734.

In Ohio, the following elements are necessary to prove common-law fraud:

> (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material, (3) made falsely, with knowledge of its falsity or with reckless disregard for the truth, (4) with the intent to mislead, (5) justifiable reliance on the representation or concealment, and (6) injury proximately caused by such reliance.

*Roberts v. McCoy*, 88 N.E.3d 422, 427-28 (Ohio Ct. App. 2017) (citations omitted). "An action for fraud may be grounded upon a failure to fully disclose facts of a material nature where there exists a duty to speak." *Id.* (quoting *Layman v. Binnis*, 519 N.E.2d 642, 644 (Ohio 1988)).

With respect to a transfer of residential real property and the requirement under Ohio Revised Code section 5302.30(D) that sellers must disclose to buyers latent defects in the property that are within their actual knowledge, "[i]f a seller fails to disclose a material fact on the disclosure form with the intention of misleading the buyer and the buyer relies on the

disclosure form, the seller may be liable for the resulting injury or damages." *Kess v. Khan*, 222 N.E.3d 1121, 1131 (Ohio Ct. App. 2023). Defendants argue that Plaintiff pursued recovery in the State Court Lawsuit under section 5302.30 for Defendants' failure to disclose the water damage on the Ohio RPDF and that such a claim differs from a claim for fraud under § 523(a)(2)(A). The Ohio statute at issue, however, "does not give rise to an independent cause of action." *Montgomery v. Vargo*, 60 N.E.3d 709, 712 (Ohio Ct. App. 2016). As explained by the Ohio court in *Montgomery*, "[t]he statute merely codifies a party's duty to disclose certain facts for the purposes of residential real estate transactions." *Id.* As explained by one Ohio court applying the relevant statute:

> [Revised Code section] 5302.30 charges the director of commerce to prescribe a disclosure form that sellers of residential real property must provide to purchasers. The form is "designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred . . . and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D). A duty of good faith is imposed on the seller, R.C. 5302.30(E)(1), though liability for non-disclosure does not apply to matters "not within the transferor's actual knowledge." R.C. 5302.30(F)(1).
>
> A seller's response or non-response to the questions posed by the residential property disclosure form does not warrant the good condition of the property. . . . Rather, they constitute the owner's representations concerning his actual knowledge of the condition of the property in respect to the particulars specified.
>
> *A variance between the owner's representations and the truth and fact of the matters concerned may be a basis for a claim of fraud*, and the seller's duty of good faith requires him to act with an honest belief or purpose in the responses he provides.

*Hubbard Fam. Tr. v. TNT Land Holdings, LLC*, 9 N.E.3d 411, 421 (Ohio Ct. App. 2014) (emphasis added) (citations omitted).

Thus, to succeed on her claim in the State Court Lawsuit, Plaintiff had to "prove all elements of a fraud claim and not that [Defendants] simply failed to disclose a fact under which an arguable duty to do so existed." *Montgomery*, 60 N.E.3d at 712. "Fraudulent conduct may not be established by conjecture; it must be proved by direct evidence or justifiable inferences from

established facts." *Brown v. Burnett*, 144 N.E.3d 475, 484 (Ohio Ct. App. 2020) (citations omitted). "In determining whether a party justifiably relied on a representation, courts must consider all of the relevant circumstances, including the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective knowledge and means of knowledge." *Kess*, 222 N.E.3d at 1137 (citations omitted) (applying fraud in the context of Ohio Rev. Code Ann. § 5302.30).

The Sixth Circuit Bankruptcy Appellate Panel has affirmed that the elements of fraud under Ohio law are "virtually identical" to the elements of fraud under § 523(a)(2)(A), and other courts have agreed. *Ed Schory & Sons, Inc. v. Francis* (*In re Francis*), 226 B.R. 385, 389 (B.A.P. 6th Cir. 1998); *see also In re Johnson*, 662 B.R. at 647 ("[I]f the State Court Judgment carries issue-preclusive effect, its findings as to Johnson's fraud would leave nothing for the Court to decide regarding the dischargeability of Johnson's debt."); *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 430 (Bankr. S.D. Ohio 2007) ("The issue of the dischargeability . . . was not—and could not—have been adjudicated by the State Court. Nevertheless, the elements of common law fraud in Ohio are substantially equivalent to those required to establish a nondischargeable debt based on false representation under § 523(a)(2)(A).").

Plaintiff's State Court Lawsuit asserted "claims for breach of contract, fraud, unjust enrichment, detrimental reliance, and resulting damages." [Doc. 19-4 at 3.] After Plaintiff presented proof of her damages at the evidentiary trial on her motion for default judgment, the magistrate found that Defendants had failed to meet their obligation codified in section 5302.30 to "disclose . . . latent defects within their knowledge on a [RPDF]." [Doc. 19-4 at 6.] Critically, the magistrate acknowledged that Ohio law allows an award of damages only when "the sellers fail to disclose a material fact on the [RPDF] with the intention of misleading the buyer[] and the buyer relies on the form." [*Id.*]

Moreover, the magistrate expressly found that the evidence showed that Defendants had "actual knowledge" of problems and "fraudulently failed to disclose" them to Plaintiff.[9] [Doc. 19-4 at 7.] Significantly, the magistrate cited to two cases that concern fraud in the context of a seller failing to disclose property conditions to a buyer, *Rodgers v. Sipes*, No. 3-11-19, 2012 WL 2553921 (Ohio Ct. App. July 2, 2012) (holding that the seller did not commit fraud when the buyer had an unimpeded opportunity to examine the premises so that the doctrine of caveat emptor applied), and *Pedone v. Demarchi*, No. 88667, 2007 WL 4442660, at *4 (Ohio Ct. App. Dec. 20, 2007) (reviewing claims for fraudulent misrepresentation and fraud for a seller's nondisclosure and acknowledging that "[f]raud may be committed not only by affirmative misrepresentation or concealment, but also by nondisclosure when there is a duty under the circumstances to disclose").

Moreover, as outlined in the Magistrate's Decision, an award of punitive damages under Ohio law requires a finding of actual malice:

> [A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In the latter case, before submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.

*Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987); *see also Gibbons v. Shalodi*, 174 N.E.3d 832, 848 (Ohio Ct. App. 2021) ("In Ohio, punitive damages may be awarded in tort actions involving fraud, malice, or insult."). Thus, malice is a necessary requirement for a finding of

---

[9] Defendants complain that the magistrate "adopted" Plaintiff's testimony about problems having been covered up by boxes or duct tape to find that Defendants intentionally concealed the problems, and they assert that this Court should require Plaintiff to prove Defendant's fraudulent intent. [Doc. 30 at 3, 7.] The argument is unavailing under the doctrine of collateral estoppel as explained herein.

punitive damages under Ohio law, and reckless disregard is within the definition of both actual malice and an element of actual fraud under Ohio law.

Given that no independent (i.e., non-fraud-based) cause of action arises out of section 5302.30 and given the magistrate's reliance on Ohio fraud caselaw in support of her determination to award damages, including punitive damages and attorney fees, this Court finds that the issues in the State Court Lawsuit and the resulting Judgment are the same as for Plaintiff's nondischargeability action under § 523(a)(2)(A). Thus, this element of collateral estoppel is met.

### 2. The issues were actually and directly litigated in the State Court Lawsuit.

To determine whether an issue was "actually and directly litigated in the prior suit," the Court looks to the language of the Judgment itself for whether the state court made an "express adjudication" that allows an interpreting court to ascertain its findings of fact and/or conclusions of law. *In re Doll*, 585 B.R. 446, 458 (Bankr. N.D. Ohio 2018). To satisfy the "express adjudication" standard,

> the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine to default judgments (e.g., due process concerns), [and] this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*Id.* (quoting *Hinze v. Robinson* (*In re Robinson*), 242 B.R. 380, 407 (Bankr. N.D. Ohio 1999)).

> Thus, the rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Id*. at 458-59 (quoting *Sill v. Sweeney* (*In re Sweeney*), 276 B.R. 186, 193-94 (B.A.P. 6th Cir. 2002)).

Defendants argue that this Court should not apply collateral estoppel to the Judgment because the state court reached its conclusions from evidence presented solely by Plaintiff when Defendants did not appear to present evidence. Defendants cite to a recent bankruptcy court decision from Northern Ohio, implying that the case shows that a certain level of proof is required at the hearing to determine damages for a default judgment. [*See* Doc. 30 at 5-6 (citing *In re Hakli*, 2024 WL 4379768).] This Court acknowledges that the proof to the state court in *In re Hakli* was more than Plaintiff presented in the State Court Lawsuit. Unlike Defendants here, even after the state court sanctioned the defendants there for discovery abuses by entering default against them, they still participated in the multi-day damages hearing before the state magistrate and unsuccessfully appealed the state court's ruling to the Ohio Court of Appeals. *In re Hakli*, 2024 WL 4379768 at *2-3. As noted by the *Hakli* bankruptcy court, however, all that is required for a finding that a default judgment satisfies the collateral-estoppel element of a "final judgment on the merits after a full and fair opportunity to litigate" is that the "default judgment 'contain express findings . . .' [that] 'need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment.'" *Id.* at *7, *8 (citations omitted). The bankruptcy court further explained that "[u]nder Ohio law, 'if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action.'" *Id.* (quoting *State v. Foster* (*In re Foster*), 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002)).

Here, the magistrate made it clear that Plaintiff submitted evidence at the trial such that the court did not rely solely on Plaintiff's pleadings. Defendants acknowledge that they were

given a full and fair opportunity to litigate the matter: "At the time Ms. Reed filed a Complaint in the State Court we had insufficient financial resources to properly pay legal counsel to defend the case. . . . [W]e understood the Ohio Court conducted a trial after notice and we were not present[.]" [Doc. 29-1 at ¶¶ 3, 4.]

Moreover, the Magistrate's Decision expressly includes three pages of detailed findings of fact based on Plaintiff's evidentiary proof. [*See* Doc. 19-4 at 3-5.] The magistrate referenced exhibits submitted by Plaintiff, including photographs of the Property, to support her testimony and claims against Defendants. The findings of fact presented in the Magistrate's Decision clearly satisfy the "express adjudication" standard adopted by the Ohio courts so that the default judgment satisfies the collateral-estoppel element requiring that the issue of fraud was actually and directly litigated.

## II.  CONCLUSION

Based on the record, Plaintiff has met its burden of proving that there is no genuine dispute of material fact and that she is entitled to judgment as a matter of law. Under the doctrine of collateral estoppel, as defined under Ohio law, and pursuant to § 523(a)(2)(A), the Judgment entered by the Civil Division of the Common Pleas Court of Greene County, Ohio on November 13, 2023, in favor of Plaintiff and against Defendants in the amount of $67,500.00 is nondischargeable. An Order consistent with this Memorandum will be entered.

FILED:  January 7, 2025

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE